OFFICE OF DISCIPLINARY COUNSEL *v.* GRDINA.

[Cite as *Disciplinary Counsel v. Grdina,*
101 Ohio St.3d 150, 2004-Ohio-299.]

(No. 2003–1530—Submitted October 20, 2003—Decided February 11, 2004.)

**Per Curiam.**

{¶ 1} Respondent, Michael F. Grdina of Mayfield Heights, Ohio, Attorney Registration No. 0038399, was admitted to the Ohio bar in 1964. On May 17, 2002, relator, Disciplinary Counsel, charged respondent in an amended complaint with multiple violations of the Code of Professional Responsibility. Respondent

did not answer the original or the amended complaint, but after he retained counsel, the parties submitted comprehensive stipulations, including a proposed sanction for the agreed-upon misconduct. A panel of the Board of Commissioners on Grievances and Discipline heard the cause and made findings of fact, conclusions of law, and a recommendation.

{¶ 2} At the outset, the parties stipulated that respondent has not registered as an attorney since September 3, 1997, and that his law license has been suspended since June 1, 2000, for his failure to comply with continuing legal education requirements. See Gov.Bar R. VI(1)(A) and X.

{¶ 3} With respect to the first four counts of the complaint, the parties stipulated that respondent agreed in June 1999 to safeguard Sherrie Filliater's interests in the estate of Thomas D. Parker, her deceased father; the Thomas D. Parker Trust; and the Fritzie A.M. Parker Trust and to analyze three related trusts on her behalf. Filliater paid respondent $2,000. Respondent reviewed the trusts and spent several days in conference with lawyers who represented others' interests. He later estimated that the cost of this time exceeded the amount of his retainer.

{¶ 4} Filliater, who was the executor of her father's estate, also retained respondent to represent her concerning paternity issues involving another relative's child. Respondent's expertise was in tax and estate planning; however, Filliater ultimately prevailed upon him to accept the representation. In January 2001, Filliater paid respondent an additional $1,000 for his services.

{¶ 5} According to the stipulations, the estate was worth between $1.2 and 2 million, with the probate estate having a value of approximately $38,000. While administering this estate, respondent misrepresented to Filliater at least once that he had filed necessary papers in probate court when, in fact, he had not. Respondent also delayed in completing federal and state tax returns for the estate and failed to file them timely, resulting in penalties against the estate. In a letter dated April 14, 2000, Filliater's husband discharged respondent for his misrepresentation and inaction. Respondent later refunded Filliater's $3,000 in full.

{¶ 6} The panel found, consistent with the parties' stipulations, that respondent had violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice), 6–101(A)(3) (neglect of an entrusted legal matter), and 7–101(A)(3) (causing prejudice or damage to a client) in representing Filliater.

{¶ 7} The panel found with respect to another count, consistent with the parties' stipulations, that respondent had violated DR 6–101(A)(3) and 7–101(A)(3) by failing to prepare and file papers for the administration of the estate of Lucille

Clark's husband. Respondent did not file a state tax return as required, resulting in penalties against the estate.

{¶ 8} Both clients submitted grievances concerning respondent's neglect. During its investigation, relator sent four certified letters of inquiry concerning the Clark grievance to respondent, but these letters were returned either as undeliverable or unclaimed. Yet respondent did respond to a letter of inquiry sent to the same address about Filliater's grievance. Respondent also promised to respond to a subsequent letter inquiring about Clark's grievance but never did. The panel thus found respondent in violation of Gov.Bar R. V(4)(G) (failing to cooperate in an investigation of misconduct). However, the panel also found that respondent cooperated completely in the disciplinary proceedings once he retained counsel.

{¶ 9} Finally, the panel found respondent in violation of DR 9–102(A) (failing to maintain client's funds in an identifiable bank account), consistent with the stipulations, because from March 1999 through February 2002, he frequently paid personal bills from clients' funds deposited in his trust account.

{¶ 10} In recommending a sanction for this misconduct, the panel reviewed the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline. The panel found respondent's failure to register and license suspension to be aggravating. In addition, the panel found that respondent had engaged in a pattern of misconduct and multiple offenses by committing similar misconduct with respect to two separate clients. The panel found as mitigating that respondent, who had voluntarily stopped practicing in April 2000, had no prior disciplinary history and apparently had been a competent practitioner for many years before the underlying events.

{¶ 11} The panel also considered extenuating the reasons for which respondent decided to stop practicing. After respondent's wife died in 1995, he was shaken by the loss and began drinking alcohol heavily and, eventually, uncontrollably. His alcohol abuse overcame his ability to represent clients effectively and often curbed his desire to work at all.

{¶ 12} In the summer of 2000, relator referred respondent to the Ohio Lawyers Assistance Program ("OLAP"), and he entered an extended alcoholism treatment program recommended by OLAP's executive director. Respondent has since completed that program, become an active member of Alcoholics Anonymous, and is in the process of complying with a two-year OLAP recovery contract he signed on June 14, 2002. The associate director of OLAP, who is assisting in respondent's recovery program, has certified that respondent "is committed to working a recovery program in order to maintain his sobriety."

{¶ 13} The panel found that respondent's neglect was largely the result of his alcoholism. In addition to respondent's testimony on this fact, a cousin close to respondent, a retired CPA who helped respondent by driving him to and taking notes at conferences concerning the Filliater matter, confirmed that drinking had gradually compromised respondent's professional conscientiousness. The panel also found that respondent had expressed remorse for his misconduct, had been forthright during the disciplinary proceeding, had not acted out of self-interest, and had made restitution to Filliater. Finally, the panel found that respondent had shown dedicated efforts to manage his alcoholism and that there was no evidence of misappropriation in connection with respondent's having commingled funds.

{¶ 14} Relator and respondent jointly suggested that respondent be suspended from the practice of law for two years with one year stayed. The panel recommended this sanction, adding that the one-year period should be stayed on the condition that respondent, upon any petition for reinstatement, present proof of his having satisfactorily completed his OLAP contract. The board adopted the panel's findings of misconduct and its recommendation.

{¶ 15} We agree that respondent violated DR 1–102(A)(4), 1–102(A)(5), 6–101(A)(3), 7–101(A)(3), and 9–102(A), and Gov.Bar R. V(4)(G), as found by the board. We also concur in the recommended sanction. Accordingly, respondent is hereby suspended from the practice of law in Ohio for two years; however, one year of this sanction is stayed on the condition that respondent continue to comply with his OLAP contract. If following the year of actual suspension respondent has complied with continuing legal education and attorney registration requirements and applies for reinstatement, his petition shall include proof of his continued compliance with the OLAP recovery contract. Furthermore, if respondent fails to comply with his OLAP contract, the stay shall be lifted, and he shall serve the entire two-year suspension period. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, for relator.

Bruce Tyler Wick, for respondent.