DISCIPLINARY COUNSEL *v.* KELLER.

[Cite as *Disciplinary Counsel v. Keller,*
110 Ohio St.3d 240, 2006-Ohio-4354.]

(No. 2006–0437—Submitted April 25, 2006—Decided September 6, 2006.)

**Per Curiam.**

{¶ 1} Respondent, Larry Wendall Keller of Cincinnati, Ohio, Attorney Registration No. 0003670, was admitted to the Ohio bar in 1981.

{¶ 2} On February 7, 2005, relator, Disciplinary Counsel, charged respondent with several violations of the Code of Professional Responsibility. Relator and respondent filed stipulations in which respondent admitted to the alleged misconduct and to each of the disciplinary violations set forth in the complaint. A panel of the Board of Commissioners on Grievances and Discipline held a hearing and, based on the parties' stipulations, testimony, and other evidence, made findings of fact, conclusions of law, and a recommendation, all of which the board adopted.

## Misconduct

{¶ 3} In 2001, Ann Thompson, an 82–year–old woman, was injured in an automobile accident. She hired respondent to pursue a personal-injury claim. Respondent and Thompson entered into a contingency-fee agreement but respondent failed to inform Thompson that he did not carry malpractice insurance. After making a few initial efforts on her behalf, respondent began ignoring Thompson's calls. He also stopped communicating with the tortfeasor's insurance company despite the fact that there was a $100,000 insurance policy at issue.

{¶ 4} In late 2002, respondent falsely told Thompson that a lawsuit had been filed on her behalf, that the case was progressing as planned, and that he was negotiating with the tortfeasor's insurance company. Thereafter, Thompson continued to leave messages for respondent, but he failed to return her calls.

{¶ 5} In July 2003, Thompson wrote a letter to respondent advising him that she was terminating his services. On July 30, 2003, respondent telephoned Thompson and falsely stated that he had received a $30,000 settlement offer from the tortfeasor's insurer, and that if she accepted the offer, he would not charge her for his services. At the panel hearing, respondent testified that had Thompson accepted his proposal, his intent was to pay the $30,000 from personal funds that he then possessed. Thompson requested that respondent put the offer in writing but he never did so.

{¶ 6} In August 2003, Thompson retained new counsel to pursue her personal-injury case. Thompson's new counsel discovered that no lawsuit had been filed and that the two-year statute of limitations had run. Thompson obtained a default judgment in her malpractice action against respondent in the amount of $102,800. The judgment remains unsatisfied.

{¶ 7} Based upon the stipulations and the evidence presented at the hearing, the board found that respondent had violated DR 1–102(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation); 1–102(A)(5) (barring conduct that is prejudicial to the administration of justice); 1–102(A)(6) (barring conduct that adversely reflects on a lawyer's fitness to practice law); 1–104(A) (requiring an attorney to disclose to clients that he does not carry professional-liability insurance); 6–101(A)(3) (prohibiting the neglect of an entrusted legal matter); and 6–102 (prohibiting an attorney from attempting to exonerate himself or limit his liability to a client for personal malpractice).

## Sanction

{¶ 8} In recommending a sanction for this misconduct, the board weighed the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 9} As aggravating factors, the parties stipulated that respondent's misconduct was aggravated by Thompson's vulnerability and the resulting harm that respondent's misconduct caused her. The board also found that respondent's neglect was aggravated. by his dishonest misrepresentations to Thompson that her case had been settled and by his failure to attempt to remedy the harm caused to his victim. See BCGD Proc.Reg. 10(B)(1)(b), (h), and (i).

{¶ 10} The parties stipulated that respondent had no prior disciplinary record. At the hearing, respondent also offered evidence of his good character and of his chemical dependency in mitigation of any sanction. In relation to his chemical dependency, respondent has become active with the Ohio Lawyers Assistance Program ("OLAP") and Alcoholics Anonymous. Respondent has maintained his sobriety since April 2005 and has been "totally compliant" with his OLAP contract of abstinence and recovery. The board also considered that respondent was affected by a series of unfortunate events occurring at the time of his misconduct, including the murder of his adopted daughter, the subsequent trial of her killer, and a painful divorce. Finally, respondent showed considerable remorse throughout the hearing, which the panel found to be genuine.

{¶ 11} Relator recommended that respondent be suspended for one year, with six months stayed. Respondent requested that any suspension be stayed in its entirety. The board adopted the panel's recommended sanction of a two-year suspension with the final 18 months stayed upon the conditions that respondent continue to comply with his OLAP contract and commit no further misconduct during the period of the stayed suspension.

### Review

{¶ 12} Upon review, we agree that respondent violated DR 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 1–104(A), 6–101(A)(3), and 6–102. We modify the recommended sanction by adding an additional requirement for reinstatement.

{¶ 13} We acknowledge that respondent has no prior disciplinary record, that he has demonstrated considerable and genuine remorse throughout the disciplinary process, and that he has shown a dedicated effort to manage his alcoholism. Nevertheless, respondent's attempts to conceal his neglect and his failure to remedy the harm that was caused warrant an actual suspension. Cf. *Cincinnati Bar Assn. v. Diehl,* 105 Ohio St.3d 469, 2005-Ohio-2817, 828 N.E.2d 1004 (restitution was made to client before the disciplinary process was completed); and *Disciplinary Counsel v. Grdina,* 101 Ohio St.3d 150, 2004-Ohio-299, 803 N.E.2d 392 (restitution was made to the client).

{¶ 14} Accordingly, respondent is hereby suspended from the practice of law for two years with 18 months stayed, provided that respondent (1) commit no further misconduct during the two-year suspension period, and (2) continue to

comply with his OLAP contract. If respondent fails to comply with either of these conditions, the stay will be lifted, and respondent will serve the full two-year suspension. We further require that respondent make restitution in the amount of $102,800, with interest at the judgment rate, to Ann Thompson, before he may apply to be reinstated to the practice of law. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Joseph M. Caligiuri, Assistant Disciplinary Counsel, for relator.

Larry W. Keller, pro se.