DISCIPLINARY COUNSEL *v.* FREEMAN.

**[Cite as *Disciplinary Counsel v. Freeman,*
119 Ohio St.3d 330, 2008-Ohio-3836.]**

(No. 2008–0395—Submitted May 21, 2008—Decided August 13, 2008.)

_____

CUPP, J.

{¶ 1} Respondent, Henry R. Freeman of Tallmadge, Ohio, Attorney Registration No. 0022713, was admitted to the Ohio bar in 1981. Relator, Disciplinary Counsel, filed a three-count complaint charging respondent with violations of the Code of Professional Responsibility and the Rules of Professional Conduct.[1]

_____

1. Because respondent's misconduct in Count I occurred both prior to and after the adoption of the Rules of Professional Conduct on February 1, 2007, relator charged respondent under the

Respondent stipulated to the violations set forth in the complaint, and a panel of the Board of Commissioners on Grievances and Discipline held a hearing. Based on the stipulations and other evidence, the panel made findings of fact, conclusions of law, and a recommendation, which the board adopted.

{¶ 2} The board recommends that we suspend respondent from the practice of law for one year, with the entire suspension stayed on conditions. We adopt the board's findings of misconduct. We reject, however, the board's recommended sanction and find instead that respondent should be suspended for one year, with six months stayed on conditions.

## Misconduct

### *Count I*

{¶ 3} Respondent has practiced law as a solo practitioner since his admission to the bar. From at least January 1, 2004, through March 24, 2006, respondent maintained a client trust account at Fifth Third Bank. Beginning in June or July 2006, respondent maintained a client trust account at First Merit Bank. From 2004 until December 2007, respondent deposited client funds and unearned retainers into those client trust accounts. Respondent admitted that from 2004 through 2006 he used his client trust accounts as personal checking accounts to pay personal bills and as law office operating accounts to pay office bills. Respondent stated that he had commingled client and lawyer funds in those accounts, that he had overdrawn the trust accounts 14 times during this period, and that he had failed to maintain an appropriate accounting of client funds deposited into the accounts.

{¶ 4} The board found that respondent's actions amounted to violations of DR 1–102(A)(5) and Prof.Cond.R. 8.4(d) (both prohibiting conduct that is prejudicial to the administration of justice), DR 1–102(A)(6) and Prof.Cond.R. 8.4(h) (both prohibiting conduct adversely reflecting on the lawyer's fitness to practice law), DR 9–102(A) and Prof.Cond.R. 1.15(a) (both requiring a lawyer to deposit all client funds paid to a lawyer in identifiable bank accounts and barring the commingling of lawyer and client funds), and DR 9–102(B)(3) and Prof.Cond.R. 1.15(a)(2) and (3) (both requiring a lawyer to maintain complete records of client funds in the lawyer's possession and to render appropriate accounts to clients regarding them).

---

applicable rule of both the former Code of Professional Responsibility and the current Rules of Professional Conduct. We agree with the board, however, that the listing of the former and the current rule constitutes only one rule violation.

*Count II*

{¶ 5} On March 21, 2006, relator sent a letter of inquiry by certified mail to respondent regarding the allegations set forth in Count I. Respondent received the letter and signed the return receipt but failed to respond to the letter. Respondent accepted receipt of a second letter of inquiry from relator in April 2006, but he again failed to respond to the letter.

{¶ 6} On September 15, 2006, relator personally served respondent with a subpoena to appear for a deposition to answer questions regarding the Count I allegations. After the deposition, relator sent a follow-up letter to respondent on October 18, 2006, requesting additional information. Respondent, however, failed to respond to that letter.

{¶ 7} Relator contacted respondent in February 2007 about his lack of response to the October 2006 letter. Pursuant to that discussion, relator re-sent the October letter to respondent by e-mail and ordinary mail to respondent's home. Respondent once again failed to respond.

{¶ 8} In regard to Count II, the board found that respondent had violated DR 1–102(A)(5) and 1–102(A)(6) and Gov.Bar R. V(4)(G) (failure to cooperate in a disciplinary investigation).

*Count III*

{¶ 9} In December 2005, Delores Ellis filed a grievance against respondent with the Cleveland Bar Association. The bar association requested a written response to the grievance, but respondent failed to respond.

{¶ 10} On April 25, 2006, relator sent a letter of inquiry by certified mail to respondent's law office regarding the Ellis grievance. The post office returned the letter as undeliverable and indicated that respondent had moved his office. On May 2, 2006, relator sent a letter of inquiry by certified mail to respondent's home address. Respondent signed the return receipt but did not respond to the letter. Relator sent a second letter of inquiry to respondent's home on May 30, 2006, which was returned unclaimed. The second letter of inquiry was re-sent, and respondent signed the return receipt, yet he did not respond to relator's inquiry.

{¶ 11} On July 6, 2006, relator hand-delivered the second letter of inquiry to respondent at his home. Respondent then requested and was granted two extensions of time to respond. Respondent failed, however, to respond. In September 2006, relator served respondent with a subpoena to appear for a deposition regarding the Ellis grievance. On October 12, 2006, respondent attended the deposition and fully answered all questions.

{¶ 12} Based on respondent's failure to cooperate in the Ellis grievance, the board found that respondent violated DR 1–102(A)(5) and 1–102(A)(6) and Gov.Bar R. V(4)(G).

## Recommended Sanction

{¶ 13} In recommending a sanction, the board considered the aggravating and mitigating factors listed in Section 10 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg.").

{¶ 14} As aggravating factors, the board found that respondent had engaged in a pattern of misconduct, had committed multiple offenses, and had failed to cooperate in the disciplinary process. BCGD Proc.Reg. 10(B)(1)(c), (d), and (e).

{¶ 15} In mitigation, the board found that respondent had no prior disciplinary offenses and that there was no dishonesty or selfish motive. BCGD Proc.Reg. 10(B)(2)(a) and (b). The board also found that respondent had entered into a three-year contract with the Ohio Lawyers Assistance Program ("OLAP") and has complied with its terms. Respondent was also diagnosed with "adjustment disorder with mixed anxiety and depressed mood," and the board found that respondent's depression was likely a contributing factor in his initial failure to cooperate. See BCGD Proc.Reg. 10(B)(2)(h).

{¶ 16} The panel recommended that respondent be suspended from the practice of law for one year, with the entire suspension stayed and respondent placed on monitored probation on the conditions that respondent (1) extend his OLAP contract for at least two years from our court's order, (2) abide by the obligations imposed on him by his OLAP contract, (3) continue his treatment for anxiety and depression and provide proof of his treatment and any other medical information that may be requested by his OLAP-contract monitor, (4) cooperate with relator and a law-practice monitor during his stayed suspension, and (5) refrain from any disciplinary violations during his stayed suspension. The board adopted the panel's recommendation.

## Review

{¶ 17} Respondent does not challenge the board's findings of misconduct or the recommended sanction. Relator, however, opposes the board's recommendation for a stay of the entire suspension. Relator contends that respondent's misconduct and his ongoing medical condition and treatment warrant an actual suspension from the practice of law. Relator urges us to impose a one-year suspension of respondent's license to practice law, with six months stayed on conditions.

{¶ 18} We have reviewed the board's record and its report, and we agree that respondent violated DR 1–102(A)(5), 1–102(A)(6), 9–102(A), and 9–102(B)(3), Prof.Cond.R. 8.4(d), 8.4(h), 1.15(a), 1.15(a)(2), and 1.15(a)(3), and Gov.Bar R. V(4)(G). We disagree, however, that the board's recommended sanction is appropriate.

{¶ 19} "The mishandling of clients' funds either by way of conversion, commingling, or just poor management, encompasses an area of the gravest concern of this court in reviewing claimed attorney misconduct." *Columbus Bar Assn. v. Thompson* (1982), 69 Ohio St.2d 667, 669, 23 O.O.3d 541, 433 N.E.2d 602. We have previously held that it is "of the utmost importance that attorneys maintain their personal and office accounts separate from their clients' accounts and that the violation of that rule warrants a substantial sanction whether or not the client has been harmed." *Erie–Huron Counties Joint Certified Grievance Commt. v. Miles* (1996), 76 Ohio St.3d 574, 577, 669 N.E.2d 831.

{¶ 20} In *Disciplinary Counsel v. Morgan*, 114 Ohio St.3d 179, 2007-Ohio-3604, 870 N.E.2d 1171, we imposed a two-year suspension with one year conditionally stayed on an attorney who had commingled funds in his client trust account, had overdrawn the account numerous times, and had failed to cooperate in the disciplinary investigation. In doing so, we noted that a "more stringent sanction than a stayed suspension" was warranted for this type of misconduct. Id. at ¶ 11. And in *Disciplinary Counsel v. Grdina*, 101 Ohio St.3d 150, 2004-Ohio-299, 803 N.E.2d 392, we imposed a two-year suspension with one year conditionally stayed on an attorney who had paid personal bills out of his client trust account, neglected client matters, made a misrepresentation to a client, and failed to cooperate in two disciplinary investigations.

{¶ 21} We acknowledge that the above cases are somewhat distinguishable from the matter before us. Unlike the lawyer in *Morgan*, respondent did eventually cooperate in the disciplinary process and did submit some mitigating evidence. And unlike the lawyer in *Grdina*, respondent's misconduct did not involve client neglect or misrepresentation. In that regard, while we do not find that a fully stayed suspension is appropriate, we do find that respondent's misconduct merits a lesser sanction than those imposed in *Morgan* and *Grdina*.

{¶ 22} Moreover, we find that an actual suspension is appropriate here in order to adequately protect the public. Respondent was diagnosed and is currently being treated for anxiety and depression. In addition, it is the opinion of respondent's doctor that respondent's recovery is incomplete and that he is not yet capable of providing legal services to clients beyond routine legal matters. Thus, imposing an actual suspension upon respondent will serve the dual purpose of protecting the public and providing respondent with additional time to complete his treatment and recovery.

{¶ 23} Accordingly, respondent is suspended from the practice of law for one year, with six months stayed, and respondent is placed on probation on the conditions set forth in the board's report. If respondent violates the conditions of the stay, the stay will be lifted, and respondent will serve the entire term of the suspension. Costs are taxed to respondent.[2]

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, and LANZINGER, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent and would suspend respondent for one year, all stayed.

---

Jonathan E. Coughlan, Disciplinary Counsel, and Robert R. Berger, Assistant Disciplinary Counsel, for relator.

Henry R. Freeman, pro se.

---

2. We also deny respondent's request to seal the statement of the mitigating factors in the board's report.