AKRON BAR ASSOCIATION *v.* MAHER.

[Cite as *Akron Bar Assn. v. Maher,* 121
Ohio St.3d 45, 2009-Ohio-356.]

(No. 2008–1270—Submitted August 26, 2008—Decided February 5, 2009.)

**Per Curiam.**

{¶ 1} Respondent, Douglas B. Maher of Barberton, Ohio, Attorney Registration No. 0024038, was admitted to the practice of law in Ohio in 1977. The Board of Commissioners on Grievances and Discipline recommends that we indefinitely suspend respondent's license to practice, based on findings that he committed professional misconduct, including multiple acts of dishonesty and failing to provide competent legal representation to clients. We adopt the board's findings of misconduct and accept the recommendation for an indefinite suspension.

{¶ 2} Relator, Akron Bar Association, charged respondent with numerous violations of Gov.Bar R. V(4)(G) (requiring cooperation in a disciplinary investigation), the Disciplinary Rules of the Code of Professional Responsibility, and the Rules of Professional Conduct.[1] A panel of the board heard the case, making findings of misconduct and recommending the indefinite suspension. The board adopted the panel's findings and recommendation.

{¶ 3} The parties have not objected to the board report.

### Misconduct

{¶ 4} Clear and convincing evidence established that respondent committed misconduct in connection with three separate attorney-client relationships. The first case involved a wrongful-death claim arising out of a nursing home incident, the second case involved a civil protection order in a domestic relations dispute, and the third case involved a probate estate and the subsequent bankruptcy of the executor. Clear and convincing evidence also shows that respondent commit-

---

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility. In specifying both the former and current rules for the same acts, the allegations compose a single ethical violation. *Disciplinary Counsel v. Freeman,* 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

ted misconduct by making untrue statements in a previous disciplinary proceeding, *Akron Bar Assn. v. Maher*, 110 Ohio St.3d 346, 2006-Ohio-4575, 853 N.E.2d 660 ("*Maher I* "), to obtain leniency.

### A. The Respondent's Professional Duties

{¶ 5} As a member of the Ohio bar, respondent owes duties to his clients, the general public, the legal profession, and the legal system. In addition to Gov.Bar R. V(4)(G), the following ethical standards are at stake:

{¶ 6} 1. DR 1–102(A)(4) and (6), which respectively prohibit a lawyer from engaging in conduct involving "dishonesty, fraud, deceit, or misrepresentation" and "other conduct that adversely reflects on the lawyer's fitness to practice law."

{¶ 7} 2. DR 1–104, which in requiring disclosures concerning professional liability insurance provides:

{¶ 8} "(A) A lawyer shall inform a client at the time of the client's engagement of the lawyer or at any time subsequent to the engagement if the lawyer does not maintain professional liability insurance * * *. The notice shall be provided to the client on a separate form * * *.

{¶ 9} "(B) A lawyer shall maintain a copy of the notice signed by the client for five years after termination of representation of the client."

{¶ 10} 3. DR 2–110(A)(2), which in prohibiting improper withdrawal from legal representation provides:

{¶ 11} "[A] lawyer shall not withdraw from employment until the lawyer has taken reasonable steps to avoid foreseeable prejudice to the rights of his or her client, including giving due notice to his or her client, allowing time for employment of other counsel, delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules."

{¶ 12} 4. DR 6–101(A)(1) and (3), which respectively prohibit a lawyer from handling "a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it" and neglect of an entrusted legal matter.

{¶ 13} 5. DR 9–102(A) and (B)(4), which respectively require a lawyer to deposit all client funds other than costs and expenses in one or more separate, identifiable bank accounts maintained in the state and to promptly pay or deliver upon request property in the lawyer's possession that the client is entitled to receive.

{¶ 14} 6. Prof.Cond.R. 1.3, which provides, "A lawyer shall act with reasonable diligence and promptness in representing a client."

{¶ 15} 7. Prof.Cond.R. 1.15, which in ensuring the safety of client funds and property provides:

{¶ 16} "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. * * * The account shall be designated as a 'client trust account,' 'IOLTA account,' or with a clearly identifiable fiduciary title. * * *

{¶ 17} "* * *

{¶ 18} "(c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."

{¶ 19} 8. Prof.Cond.R. 1.16, which governs declining or terminating legal representation and provides:

{¶ 20} "(d) As part of the termination of representation, a lawyer shall take steps, to the extent reasonably practicable, to protect a client's interest. The steps include * * * delivering to the client all papers and property to which the client is entitled, and complying with applicable laws and rules. Client papers and property shall be promptly delivered to the client. * * *

{¶ 21} "(e) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned [with an exception not relevant here]."

{¶ 22} 9. Prof.Cond.R. 8.4(d) and (h), which respectively prohibit a lawyer from engaging in conduct that is prejudicial to the administration of justice and "other conduct that adversely reflects on the lawyer's fitness to practice law."

### B.   The Respondent's Improprieties in Attorney–Client Relationships

### 1.   The Ward Case

{¶ 23} After their disabled son died in a nursing home incident on March 22, 2004, Gary and Susan Ward engaged respondent in April 2004 to pursue damages for the loss.

{¶ 24} Respondent does not now dispute the findings that he breached ethical duties in representing the Wards. Although he did not file suit until the last day of the applicable two-year statute of limitations, respondent failed without cause to fully investigate the negligence claim either before or after he filed the complaint. Moreover, other than obtaining a coroner's report, respondent made no effort to enlist the expert witness testimony essential to winning the case.

{¶ 25} Respondent also failed without cause to respond to discovery requests. He did not obey court orders requiring his compliance with these requests, which led the defendant to move for dismissal. When the defendant later moved for summary judgment, respondent was prepared neither to respond nor to go to trial if the court denied the motion. To conceal his lack of preparation,

respondent voluntarily dismissed the Wards' case in early December 2006 without telling his clients the real reason.

{¶ 26} Respondent conceded that he should have associated with experienced co-counsel and that he misled the Wards about the reason for the voluntary dismissal of their case. Moreover, though respondent did file an action to open an estate for the Wards' deceased son for the purpose of pursuing a wrongful-death action, he did not dutifully proceed, and he disregarded orders of the probate court.

{¶ 27} The Wards discharged respondent in December within days of the voluntary dismissal and demanded their files. Later that month, respondent did not honor the written requests of the Wards and their new attorney for their files. Respondent had no basis for withholding the Wards' files.

{¶ 28} Respondent did not produce the Wards' files until early March 2007, after they filed one of the underlying grievances against him. Respondent did not initially respond to relator's inquiries about the grievance. Finally, respondent neither carried professional liability insurance nor gave the Wards notice, in writing or otherwise, that he lacked this coverage.

{¶ 29} Respondent violated DR 6–101(A)(1) and (3) with his neglect and professional incompetence in the Ward case. He did not sufficiently investigate, comply with discovery requests, or look for a needed expert; nor did he seek competent assistance. He did not determine whether to join potentially liable defendants, and he then dismissed the complaint on false pretenses. Respondent compromised the Wards' opportunity to recover for their son's death with delay that risked the loss of evidence, by compromising their ability to dismiss the cause again without prejudice, and by allowing the statute of limitations to pass on claims against other potentially liable parties.

{¶ 30} Respondent violated DR 1–104(A) by not properly disclosing his lack of professional malpractice insurance. He violated DR 1–102(A)(4) by not truthfully disclosing his lack of expertise or the status of the lawsuit. Respondent further violated DR 2–110(A)(2) and Prof.Cond.R. 1.16(d) by failing without justification to promptly deliver the Wards' papers on demand. Respondent's acts and omissions, including his failure to respond during relator's investigation, reflected poorly on his fitness to practice law, in violation of DR 1–102(A)(6) and Prof. Cond.R. 8.4(h).

### 2. The Stoner Case

{¶ 31} Terri D. Stoner engaged respondent in October 2006 to enforce a civil protective order ("CPO") that she had obtained against an assailant. Respondent knew that Stoner expected him to immediately begin proceedings against her attacker.

{¶ 32} Respondent does not now dispute the findings that he breached ethical duties in representing Stoner. Despite the threat to Stoner's safety and her repeated requests for additional protection, respondent failed to take any action on her behalf other than to prepare in mid-November 2006 an affidavit that he never filed. Respondent had no excuse for not filing the affidavit or for falsely advising Stoner, when she was able to communicate with him, that he was ably attending to her case.

{¶ 33} Stoner discharged respondent in January 2007 and requested the return of her files and fee. Respondent did not return the files for over six months. Respondent did not refund Stoner's money, which he had not deposited as unearned into his client trust account, until the panel hearing in March 2008.

{¶ 34} Respondent neither carried professional liability insurance nor gave Stoner notice, in writing or otherwise, that he lacked this coverage. He further failed to respond to relator's initial efforts to investigate Stoner's grievance.

{¶ 35} Respondent violated DR 6–101(A)(3) with his neglectful inaction in not enforcing Stoner's CPO. He violated DR 1–104(A) and (B) by failing to properly disclose his lack of professional liability insurance. By failing to deposit unearned fees in a separate client trust account, he also violated DR 9–102(A) and Prof.Cond.R. 1.15(a) and (c). Respondent did not give an honest account to his client about the status of her case, a breach of trust that constitutes a violation of DR 1–102(A)(4). He did not promptly return property to which she was entitled upon his discharge in violation of DR 2–110(A)(2) and 9–102(B)(4) and Prof. Cond.R. 1.15 and 1.16(d). Respondent violated Gov.Bar R. V(4)(G) and Prof. Cond.R. 8.4(d) by disregarding relator's investigation. Respondent's acts and inaction reflected poorly on his fitness to practice, in violation of DR 1–102(A)(6) and Prof.Cond.R. 8.4(h).

3. The Hinkle Case

{¶ 36} Larry D. Hinkle engaged respondent in September or October 1997 to represent and assist in administering the estate of Hinkle's mother.

{¶ 37} Respondent does not now dispute the findings that he breached ethical duties in representing Hinkle. Though Hinkle's mother's estate was uncomplicated, with assets worth approximately $20,000, it remained open for ten years until the end of 2007, approximately five months after Hinkle retained new counsel because of respondent's inaction. In failing to wrap up the estate within a reasonable time, respondent defied directives of his client, the probate court, and a bankruptcy trustee.

{¶ 38} Respondent determined early in his representation of the estate that buyers purchasing property of the estate on land contract, who claimed to have paid in full, still owed approximately $10,000. Yet respondent did nothing more

to convey the property or enforce the land contract, disregarding many requests from Hinkle and probate court notices and citations concerning the sale and closing the estate.

{¶ 39} Hinkle and his wife filed bankruptcy in 2005. In the interests of Hinkle's creditors, the bankruptcy trustee repeatedly attempted to communicate with respondent about completing the administration of his mother's estate. The trustee had no success.

{¶ 40} Respondent did not carry professional liability insurance or give Hinkle notice, in writing or otherwise, that he lacked this coverage. Respondent also failed to respond to relator's initial efforts to investigate the Hinkle grievance.

{¶ 41} Respondent violated DR 6–101(A)(3) and Prof.Cond.R. 1.3 by failing to administer the Hinkle estate in a timely and reasonably competent manner, a failure that complicated the sale of property in the estate and delayed his client's discharge in bankruptcy. He violated DR 1–104(A) and (B) by failing to properly disclose his lack of professional liability insurance. His failure to respond to relator's investigation and to the bankruptcy trustee violated Gov.Bar R. V(4)(G) and Prof.Cond.R. 8.4(d). Respondent's acts and inaction reflected poorly on his fitness to practice law and violated DR 1–102(A)(6) and Prof.Cond.R. 8.4(h).

### C. Respondent's Previous Disciplinary Case—Maher I

{¶ 42} Respondent was publicly reprimanded in *Maher I* for neglecting two clients in their pursuit of personal injury claims. As of the March 2006 panel hearing in *Maher I,* respondent still represented the Wards in their civil suit and Hinkle in probate court. He nevertheless told the hearing panel that he had returned to practicing only criminal and domestic relations law, the areas in which he was most proficient. 110 Ohio St.3d 346, 2006-Ohio-4575, 853 N.E.2d 660, ¶ 12. Respondent also falsely told the panel that he had acquired professional liability insurance.

{¶ 43} The panel found that respondent misrepresented these facts to appear conscientious and contrite and to sway the panel toward leniency. With this misrepresentation, respondent violated DR 1–102(A)(4).

### Sanction

{¶ 44} "A lawyer's neglect of legal matters and failure to cooperate in the ensuing disciplinary investigation generally warrant an indefinite suspension from the practice of law in Ohio." *Akron Bar Assn. v. Goodlet,* 115 Ohio St.3d 7, 2007-Ohio-4271, 873 N.E.2d 815, ¶ 20; see also *Disciplinary Counsel v. Gosling,* 114 Ohio St.3d 474, 2007-Ohio-4267, 873 N.E.2d 282, ¶ 12; *Disciplinary Counsel v. Mathewson,* 113 Ohio St.3d 365, 2007-Ohio-2076, 865 N.E.2d 891. Evidence of mitigating factors—that respondent ultimately responded with candor during the

disciplinary process, has begun mental-health treatment, and has had difficulties in his personal life—do not warrant our departure from this rule. An indefinite suspension is therefore appropriate.

{¶ 45} Respondent is indefinitely suspended from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Lee Petersen, for relator.

Lawrence L. Delino Jr., for respondent.