**AKRON BAR ASSOCIATION *v.* MCNERNEY.**

**[Cite as *Akron Bar Assn. v. McNerney,* 122 Ohio St.3d 40, 2009-Ohio-2374.]**

*Attorney misconduct, including failing to preserve the identity of clients' funds and failing to keep complete records of client trust account — Two-year suspension, with one year stayed on conditions.*

(No. 2008-2470 — Submitted February 18, 2009 — Decided May 28, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 07-094.

————————————

**Per Curiam.**

{¶ 1} Respondent, Thomas M. McNerney of Akron, Ohio, Attorney Registration No. 0076108, was admitted to the practice of law in Ohio in 2003.

{¶ 2} The Board of Commissioners on Grievances and Discipline recommends that we suspend respondent's license to practice for two years, staying the second year on conditions. The board's recommendation is based on its findings that respondent failed to preserve the identity of his clients' funds, failed to keep complete records of his client trust account, failed to give notice to his clients that his malpractice insurance had lapsed, and failed to update his attorney-registration record. We agree that respondent violated ethical standards as found by the board and that a two-year suspension with one year conditionally stayed is appropriate.

{¶ 3} Relator, Akron Bar Association, charged respondent in a five-count complaint with violations of the Disciplinary Rules of the former Code of Professional Responsibility and the current Rules of Professional Conduct.[1] A

---

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which

panel of board members heard the case and, after dismissing Counts One and Five for lack of the requisite clear and convincing evidence, made findings of fact and conclusions of law and recommended the two-year suspension and one-year conditional stay. The board adopted the panel's findings of misconduct and recommendation.

{¶ 4} The parties have not objected to the board report.

## Misconduct

*Respondent's Client-Trust-Account Improprieties*

{¶ 5} Respondent entered the practice of law as a second career after working initially in banking: first for a regulatory agency, then for an accounting firm, and later for a bank. Notwithstanding this experience, respondent maintained only a single bank account for his law practice from at least January 2006 until at least September 13, 2007, and during that time, he deposited into the account both his personal funds and funds entrusted to him by clients. Respondent never reconciled the account, and merely kept the bank statements, a checkbook, canceled checks, and copies of clients' checks to distinguish his personal funds from those of his clients.

{¶ 6} Relator deposed respondent in May 2007. He claimed that before the deposition, he had no idea that ethical standards prohibited him from using the same bank account for client funds and his own money and also required him to keep records documenting activity in the client account. See DR 9-102 and Prof.Cond.R. 1.15(a)(5). The board doubted respondent's professed ignorance because of his experience in banking and because for months after his deposition, he took no steps to open a separate personal bank account, to reconcile his client trust account, or to inquire about appropriate accounting practices.

---

supersede the Code of Professional Responsibility. In specifying both the former and current rules for the same acts, the allegations compose a single ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

{¶ 7} Despite ethical requirements for safekeeping client funds, respondent simply deposited all his receipts into one account and then withdrew what he believed he had earned in fees. Having no records to show otherwise, respondent conceded that he may have withdrawn money still belonging to clients from the funds commingled in this solitary bank account. He explained, however, that his practice involved mostly small flat fees from criminal-defense cases, and he had only two or three clients whose money he had deposited in that account.

{¶ 8} The board found that respondent had thereby violated (1) DR 9-102(A) (requiring a lawyer to maintain client funds in a separate identifiable bank account), (2) DR 9-102(B)(3) (requiring a lawyer to maintain complete records of client funds in the lawyer's possession), (3) Prof.Cond.R. 1.15(a) (requiring a lawyer to maintain entrusted client funds in an identifiable bank account and keep records of activity in the account), and (4) Prof.Cond.R. 1.15(b) (precluding a lawyer from depositing personal funds into his client trust account except as necessary to pay bank service charges). We accept these findings of misconduct.

*Respondent's Improprieties Relating to Malpractice Insurance*

{¶ 9} In January 2007, respondent's malpractice insurance lapsed, and he did not reinstate his coverage until May of that year. Respondent did not notify clients of the lapse in malpractice insurance or obtain the clients' signed acknowledgement that he lacked this coverage. The board found that respondent had thereby violated DR 1-104(A) and (B) and Prof.Cond.R. 1.4(c) (all requiring a lawyer to inform clients if the lawyer's professional-liability insurance is terminated). We accept these findings of misconduct.

*Respondent's Failure to Register*

{¶ 10} Respondent appeared for a second deposition by relator in mid-September 2007. He had not at that time updated his attorney-registration record in accordance with Gov.Bar R. VI(1)(D). Even after relator identified the problem, respondent remained in default until October 23, 2007.

{¶ 11} The board found that respondent's failure to properly register as an attorney, together with the misuse of his client trust account and failure to disclose the lapse of his malpractice insurance, violated DR 1-102(A)(6) and Prof.Cond.R. 8.4(h) (both prohibiting lawyers from engaging in conduct that adversely reflects on a lawyer's fitness to practice law). We accept these findings of misconduct.

**Sanction**

{¶ 12} Relator proposed that the board recommend either a two-year or an indefinite suspension of respondent's license, citing in addition to the gravity of his misconduct, evidence of his untreated alcoholism. Relator noted that a partial stay of the suspension on conditions would be warranted if respondent pursued treatment. Respondent submitted that he was addressing his alcohol use, that his continued practice did not pose a risk to the public, and therefore, that any recommendation of suspension should be stayed entirely in favor of probation.

{¶ 13} Having found the cited misconduct, the board considered sanctions imposed in similar cases and weighed the aggravating and mitigating factors of respondent's case. See BCGD Proc.Reg. 10(B). Adopting the panel's report, the board observed:

{¶ 14} "The underlying rule violations for mismanagement of a [client trust] account typically result in a term suspension of 6 to 24 months, totally or partially stayed depending on the length and severity of the financial mismanagement. In this case while the Relator proved that Respondent improperly maintained his [client trust] account for almost two years, there was no specific charge that any client funds were improperly taken. The challenge in this case is that evidence at hearing clearly and convincingly showed the Panel that Respondent has untreated and unresolved substance abuse and medical issues that threaten his ability to practice law."

{¶ 15} Respondent's problems with alcohol are long-standing. As a condition for his admission to the Ohio bar, he was required to participate in

4

alcohol-abuse treatment under the auspices of the Ohio Lawyers Assistance Program ("OLAP") and did so from approximately 2001 through 2004. Though he completed that program successfully, his problems with alcohol have persisted. An admitted alcoholic, respondent conceded that at the time of his 2007 depositions, he had returned to drinking alcohol. He has been cited three times for driving while under the influence of alcohol, most recently in 2005.

{¶ 16} At the October 8, 2008 panel hearing, respondent produced a new OLAP contract. An OLAP representative had signed the four-year contract in mid-July 2008; however, respondent did not sign and return the contract to OLAP until the week before the hearing. He testified that he had not spoken to OLAP representatives since that July, that he had consumed alcohol, but only "rarely," since that time, and that he had attended two Alcoholics Anonymous meetings in the week before the hearing. Of his continued use of alcohol, respondent said, "If the Panel or the Akron Bar believes that that's some kind of issue, then I need to address it, and that's what I've done."

{¶ 17} Respondent further testified that he has begun treatment with a psychologist, who diagnosed him with depression, and with two physicians, both of whom had prescribed medications for his condition. The panel chairperson granted respondent leave to file medical records specifically documenting his mental-health treatment. He did not do so.

{¶ 18} Regarding mitigating evidence, the board noted that respondent had no prior disciplinary record. See BCGD Proc.Reg. 10(B)(2)(a). Due to a lack of competent medical evidence establishing that he had been diagnosed with a mental disability and establishing a causal connection between the mental disability or alcoholism and his misconduct, see BCGD Proc.Reg. 10(B)(2)(g)(i) and (ii), the board attributed no mitigating effect to respondent's alcohol dependence and his claimed depression. In fact, because respondent had only recently entered treatment and provided no supporting medical reports, the board

doubted his commitment to a recovery program or that he understood the critical issues affecting his ability to practice. Regarding aggravating factors, the board found that respondent had engaged in a pattern of misconduct and had not been appropriately responsive during the disciplinary process. BCGD Proc.Reg. 10(B)(1)(c) and (e).

{¶ 19} The board recommended a two-year suspension, but with the second year stayed on conditions. The conditions are as follows:

{¶ 20} 1. Upon respondent's completion of the one-year suspension, his reinstatement shall be subject to the stringent standards and hearing requirement of Gov.Bar R. V(10)(C) through (G) for reinstatement from indefinite suspension;

{¶ 21} 2. With any petition for reinstatement filed, respondent shall provide proof from his treating medical professionals and OLAP that his alcohol and mental-health problems have been resolved, that he has followed all treatment recommendations, including compliance with his 2008 OLAP contract, and that he is competent to return to the competent, ethical, and professional practice of law; and

{¶ 22} 3. Upon any reinstatement, respondent shall complete one year of monitored probation pursuant to Gov.Bar R. V(9).

{¶ 23} We accept the board's recommendation. Respondent is hereby suspended from the practice of law in Ohio for two years. The second year of suspension is stayed on the recommended conditions. If respondent fails to comply with the terms of the stay and probation, the stay will be lifted, and respondent will serve the entire two-year suspension from the practice of law.

{¶ 24} Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Parker, Leiby, Hanna & Rasnick, L.L.C., and Thomas M. Parker; and Maria R. Schimer, for relator.

Thomas M. McNerney, pro se.

_____