DAYTON BAR ASSOCIATION *v.* MATLOCK.

[Cite as *Dayton Bar Assn. v. Matlock,* 134 Ohio St.3d 276, 2012-Ohio-5638.]

*Attorney misconduct—Multiple violations of the Rules of Professional Conduct—*
*Two-year suspension, partially stayed on conditions.*

(No. 2012-1023—Submitted August 22, 2012—Decided December 5, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and
Discipline of the Supreme Court, No. 10-003.

_____

**Per Curiam.**

{¶ 1} Respondent, Michael Duane Matlock of Dayton, Ohio, Attorney Registration No. 0008564, was admitted to the practice of law in Ohio in 1985. We have previously suspended Matlock from the practice of law in Ohio for failing to comply with the continuing legal education ("CLE") requirements of Gov.Bar R. X. *See In re Report of Comm. on Continuing Legal Edn.*, 88 Ohio St.3d 1468, 726 N.E.2d 1006 (2000). We have also suspended Matlock from the practice of law in Ohio on four separate occasions for failing to file a certificate of registration and pay applicable fees in accordance with Gov.Bar R. VI. *In re Attorney Registration Suspension of Matlock*, 107 Ohio St.3d 1431, 2005-Ohio-6408, 838 N.E.2d 671; *In re Attorney Registration Suspension of Matlock*, 116 Ohio St.3d 1420, 2007-Ohio-6463, 877 N.E.2d 305; *In re Attorney Registration Suspension of Matlock*, 123 Ohio St.3d 1475, 2009-Ohio-5786, 915 N.E.2d 1256; *In re Attorney Registration Suspension of Matlock*, 130 Ohio St.3d 1420, 2011-Ohio-5627, 956 N.E.2d 310. Matlock's most recent attorney-registration suspension remains in effect.

{¶ 2} In this case, the Board of Commissioners on Grievances and Discipline recommends that we suspend Matlock from the practice of law for two

years, with one year of the suspension stayed on conditions designed to protect the public and with reinstatement subject to specified conditions. The board's recommendation is based on its finding that Matlock committed professional misconduct by failing to obtain a written contingent-fee agreement and failing to respond to disciplinary investigative inquiries in one client matter, failing to complete and file forms for a qualified domestic-relations order ("QDRO") for another client, failing to communicate with both clients regarding their legal matters and failing to inform them that he did not maintain professional liability insurance, and commingling private funds and client funds and failing to document transactions for his client trust account. We agree that Matlock committed the professional misconduct found by the board, and we also agree that the appropriate sanction is a two-year suspension, with one year conditionally stayed.

{¶ 3} Relator, Dayton Bar Association, charged Matlock in a six-count second amended complaint with multiple violations of the Rules of Professional Conduct and one violation of the Rules for the Government of the Bar in Ohio. The parties stipulated to certain facts and mitigating factors and recommended that Matlock be suspended from the practice of law for one year without receiving credit for the period covered by his current attorney-registration suspension.

{¶ 4} A panel of three board members heard the case and made findings of fact and conclusions of law. The panel recommended that Matlock be suspended from the practice of law for two years, with one year of the suspension stayed on certain conditions and reinstatement subject to specified conditions. The panel added that Matlock should not receive credit for time served on his attorney-registration suspension. The board adopted the panel's findings, conclusions, and recommended sanction, and so do we.

{¶ 5} The parties have not objected to the board's report and recommendation.

**Misconduct**

*Failing to Obtain Written Contingent-Fee Agreement*

*and Failing to Respond to Investigative Inquiries and Demands*

{¶ 6}  In 2008, Tommy Jones paid Matlock $35 to have him write a letter to the client's customer demanding payment of $1,182 for painting services. There was no written fee agreement, but Matlock claimed that there was an oral agreement in which he would receive a one-third contingent fee.  Matlock wrote the requested letter, and the client's customer provided him with a check for the $1,182 demanded.

{¶ 7}  Matlock then informed Jones that he would deduct his claimed one-third fee and forward the $788 balance to Jones, and Jones filed a complaint with relator.  Jones received a $788 check from Matlock and after depositing it, Jones was notified by his bank that the check had been dishonored.

{¶ 8}  As part of its investigation of Jones's complaint, relator requested copies of Matlock's trust-account statements for 2007 and 2008 and copies of any written fee agreement or engagement letter between respondent and the client, but Matlock failed to respond to relator's initial three letters or to furnish the requested materials.  Matlock later informed Jones that the check he had previously sent had been written on the wrong account, and he subsequently sent Jones a money order for $825.  Matlock ultimately provided some financial records to relator.

{¶ 9}  The board found, and we agree, that Matlock's conduct violated Prof.Cond.R. 1.5(b) (requiring an attorney to communicate the nature and scope of the representation to the client and the rate of the fee, preferably in writing, before or within a reasonable time after commencing the representation), 1.5(c) (requiring an attorney to set forth a contingent-fee agreement in a writing signed by the client), and 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a demand for information by a disciplinary authority during an investigation)

and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in a disciplinary investigation).

*Failing to Prepare and File QDRO*

{¶ 10} In 1993, Matlock represented Jeraldine Pettiford in a divorce case. In 2007, after the divorce case had concluded, it was discovered that Matlock had failed to file a QDRO entitling Pettiford to receive a portion of her ex-husband's pension and an annuity. Matlock was to have performed these services as part of his representation of Pettiford in the divorce. In 2007, Matlock demanded and received $450 from Pettiford to file the required QDRO forms with the court, her ex-husband's retirement system, and the company that had the annuity. Despite Matlock's multiple representations to Pettiford that he had either filed or was about to file the QDRO forms, he failed to do so, and in November 2007, the domestic-relations court found him in contempt for failure to file the QDRO. Pettiford then filed the QDRO forms with the court and the retirement system herself. After Pettiford complained to Matlock about his representation of her, he sent her a cashier's check for $230.

{¶ 11} The board found, and we agree, that Matlock's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client).

*Use of Trust Account as Personal Account*

{¶ 12} In 2007 and 2008, during Matlock's representation of Pettiford and Jones, Matlock deposited personal funds into his client trust account and paid personal expenses from the trust account. Matlock did not retain sufficient records documenting the transactions involving his client trust account.

{¶ 13} The board found, and we agree, that Matlock's conduct violated Prof.Cond.R. 1.15(a) (requiring a lawyer to hold funds of clients in an interest-bearing client trust account, separate from the lawyer's own funds).

*Failing to Communicate with Clients Regarding*

*Legal Matters and Failing to Inform Clients that he did not Maintain*

*Professional-Liability Insurance*

**{¶ 14}** As noted previously, Matlock did not properly communicate with Jones and Pettiford about their legal matters. In addition, during his representation of the clients in 2007 and 2008, he did not have professional-malpractice insurance, and he was unable to produce a written form from any client acknowledging that he had informed the client of that fact.

**{¶ 15}** The board found, and we agree, that Matlock's conduct violated Prof.Cond.R. 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), and 1.4(c) (requiring a lawyer to give clients written notice if the lawyer does not maintain professional-liability insurance and to have clients sign the notice).

## Sanction

**{¶ 16}** "When imposing sanctions for attorney misconduct, we consider relevant factors, including the duties the lawyer violated and sanctions imposed in similar cases." *Toledo Bar Assn. v. Weisberg*, 124 Ohio St.3d 274, 2010-Ohio-142, 921 N.E.2d 641, ¶ 15. To determine the appropriate sanction, we also consider the aggravating and mitigating circumstances found in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Crosby*, 124 Ohio St.3d 226, 2009-Ohio-6763, 921 N.E.2d 225, ¶ 16.

**{¶ 17}** The board determined that the following aggravating factors are pertinent for Matlock's conduct here: (1) prior disciplinary offenses for his numerous attorney-registration suspensions, (2) a pattern of misconduct by his admitted inattention to the details of the practice of law, (3) the commission of multiple offenses, and (4) his initial failure to cooperate in the disciplinary

process.  BCGD Proc.Reg. 10(B)(1)(a), (c), (d), and (e).  In mitigation, the board found that Matlock (1) lacked a dishonest or selfish motive, (2) rectified the consequences of his misconduct by returning unearned funds to the two clients and that relator did not establish that either client had been damaged as a result of the misconduct, (3) fully and freely disclosed and admitted his misconduct and cooperated in the proceeding once he retained counsel, and (4) acknowledged the wrongfulness of his conduct.  BCGD Proc.Reg. 10(B)(2)(b), (c), and (d).

{¶ 18} The board further noted that Matlock was not entitled to present chemical dependency or mental disability as a mitigating factor because there was insufficient evidence that he had completed a treatment program or that he suffered from a mental disability at the time of the misconduct.  Prior to the hearing, pursuant to the panel's order, David G. Bienenfeld, M.D., conducted a psychiatric examination of respondent and concluded that Matlock does not suffer from a mental illness.  Dr. Bienenfeld did, however, diagnose Matlock as suffering from "alcohol dependence, with physiological dependence, sustained partial remission" and cirrhosis of the liver and noted that during Matlock's heavy drinking from 1993 to 2010, his marriage deteriorated, he was divorced, and he became depressed.  The board expressed particular concern regarding Dr. Bienenfeld's conclusion that Matlock's alcohol-dependence remission "is exceedingly rare without either continued outpatient treatment or Alcoholics Anonymous" and that Matlock currently was not enrolled in a treatment program and had exhibited an aversion to "such intervention and maintenance."

{¶ 19} The mishandling of client funds by commingling or poor management is of paramount importance, and this misconduct requires a substantial sanction regardless of whether a client is harmed.  *See Disciplinary Counsel v. Riek*, 125 Ohio St.3d 46, 2010-Ohio-1556, 925 N.E.2d 980, ¶ 10, and cases cited therein.  In *Riek*, the court held that that the recommended sanction of an 18-month suspension with 12 months stayed was within the range of sanctions

6

imposed by the court for similar misconduct involving attorneys who have failed to properly maintain their trust accounts. *Id.* at ¶ 12, citing *Crosby*, 124 Ohio St.3d 226, 2009-Ohio-6763, 921 N.E.2d 225, at ¶ 19 (sanctions ranging from a stayed six-month suspension to an indefinite suspension).

{¶ 20} In recommending its sanction here of a two-year license suspension with one year stayed upon conditions related to respondent's alcohol dependency, the board considered several cases, including *Akron Bar Assn. v. McNerney*, 122 Ohio St.3d 40, 2009-Ohio-2374, 907 N.E.2d 1167, in which we imposed a similar sanction of a two-year suspension with the second year conditionally stayed for misconduct that included trust-account and malpractice-insurance improprieties as well as a failure to appropriately respond to the disciplinary process. *Id.* at ¶ 20-23. In that case, as here, we noted that alcohol dependence was not a mitigating factor due to the lack of competent medical evidence establishing a causal connection between the alcoholism and the misconduct and the questionable commitment of the attorney to a recovery program, but we considered it in determining appropriate conditions for the stayed portion of the suspension. *Id.* at ¶ 16, 21.

{¶ 21} Upon our independent review of the relevant factors, we agree that the sanction recommended by the board is commensurate with Matlock's misconduct. We therefore suspend Matlock from the practice of law in Ohio for two years, with one year of the suspension stayed on the following conditions: (1) Matlock enters into a contract with the Ohio Lawyers Assistance Program ("OLAP") for such time as recommended by OLAP, (2) Matlock fully complies with all OLAP recommendations, including regular attendance at Alcoholics Anonymous meetings, (3) Matlock commits no further misconduct, and (4) during the period of his stayed suspension and for one year following the stayed suspension, Matlock is supervised by a monitor appointed by relator pursuant to Gov.Bar R. V(9) to ensure, among other things, that he is in full compliance with

his obligations regarding his OLAP contract and the handling of his client trust account and the required disclosures relating to malpractice insurance. Matlock's reinstatement from the suspension shall be subject to the requirements of Gov.Bar R. V(10)(A) and shall be specifically conditioned on his compliance with the conditions specified for the stayed suspension and his presentation of a certificate from a qualified psychiatrist that he is able to return to the competent, ethical, and professional practice of law. Furthermore, Matlock shall engage in no further misconduct. If Matlock fails to comply with these conditions, the stay will be lifted, and he will serve the entire two-year suspension. Costs are taxed to Matlock.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Beiser, Greer & Landis and David P. Williamson, for relator.

Mia Wortham Spells, for respondent.

_____