**DAYTON BAR ASSOCIATION *v*. BROWN.**

**[Cite as *Dayton Bar Assn. v. Brown*, 124 Ohio St.3d 221, 2009-Ohio-6424.]**

*Attorneys at law — Misconduct — Failure to cooperate in the disciplinary process — Indefinite license suspension.*

(No. 2009-1231 — Submitted September 16, 2009 — Decided December 15, 2009.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 08-077.

_____

**Per Curiam**.

**{¶ 1}** Respondent, Keith J. Brown of Jasper, Indiana, Attorney Registration No. 0025640, was admitted to the practice of law in Ohio in 1981. The Board of Commissioners on Grievances and Discipline recommends that we indefinitely suspend respondent's license to practice, based on findings that he failed to transfer property into trusts for two couples and then, after one of those clients died, failed in his duty to attest to the veracity of the signature on affidavits of the surviving spouse and joint survivor. We accept the board's findings that respondent committed this professional misconduct and the recommendation for the indefinite suspension of his license.

**{¶ 2}** Relator, Dayton Bar Association, charged respondent with violations of the Disciplinary Rules of the Code of Professional Responsibility and the current Rules of Professional Conduct.[1] The board sent notice of the original complaint and the complaint as amended by certified mail to respondent's

---

1. Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Code of Professional Responsibility. To the extent that both the former and current rules are cited for the same acts, the allegations compose a single ethical violation. *Disciplinary Counsel v. Freeman*, 119 Ohio St.3d 330, 2008-Ohio-3836, 894 N.E.2d 31, ¶ 1, fn. 1.

last known address in Indianapolis, Indiana, the address on record for his attorney registration. Two notices of the amended complaint were returned: one for expiration of the forwarding address and one as undeliverable. Pursuant to Gov.Bar R. V(11)(B), the board served the complaint on the Clerk of the Supreme Court.

{¶ 3} Respondent did not answer either complaint, and pursuant to Gov.Bar R. V(6)(F), relator moved for default. A master commissioner appointed by the board made findings of fact, conclusions of law, and a recommendation for an indefinite suspension of respondent's license. The board adopted the master commissioner's findings of misconduct and recommendation.

**Respondent's Claimed Lack of Notice**

{¶ 4} Respondent objects to the board's report, arguing that he received insufficient notice of the disciplinary proceedings and of the charges against him. We disagree.

{¶ 5} Lawyers admitted to the Ohio bar are required under Gov.Bar R. VI(1)(A) to register as attorneys with this court's Office of Attorney Registration every two years. Gov.Bar R. VI(D) requires attorneys who are registered for active status to provide notice of their current residence and office address and to apprise the attorney registration office of any changes in this information. During the investigation of the grievances underlying relator's complaint and the board's proceedings, respondent was registered as on active status.

{¶ 6} The board was thus entitled to rely on the address on record for respondent in providing any required legal notices. The board did so before affording respondent constructive notice of the charges against him by sending copies of the complaints, in conformity with Gov.Bar R. V(11)(B), to the clerk of this court. Relator was also entitled to rely on the registration address, and in doing so during the investigation of the grievances, relator received telephone calls and a letter from respondent, signaling his actual notice of that proceeding.

**{¶ 7}** Respondent does not dispute these facts. He had telephone interviews with relator's investigator, conversations that the investigator recalled as being combative and dismissive. And in his letter, respondent declined an invitation to meet with the investigator, advising that the trip would be "at best an inconvenience and at worst a huge waste of resources." At the conclusion of the investigation, relator's certified grievance committee scheduled another meeting, and on the appointed date, respondent called to inform the committee that he was in rehabilitation for alcohol dependence. But when relator then rescheduled the meeting as an accommodation, respondent did not appear or provide explanation.

**{¶ 8}** With the exception of his objections, relator has not heard from respondent since the investigation. After filing the motion for default, the investigator, nevertheless, located a rehabilitation facility at which he thought respondent might be residing. The investigator called and sent to that address a copy of the amended complaint; however, no one at the facility confirmed respondent's presence by accepting the call or correspondence on his behalf.

**{¶ 9}** Relator asserts that respondent has voluntarily made himself inaccessible, despite his knowledge that disciplinary proceedings were underway. We agree. In fact, respondent did not appear for oral argument after filing his objections to the board's report. We take from respondent's intermittent communications and failures to appear that he has chosen not to avail himself of opportunities to defend. The objection is therefore overruled.

### Misconduct

*The First Client's Grievance*

**{¶ 10}** After attending a financial-planning seminar in 2004, a couple retained respondent to prepare various estate-planning documents, including wills, a revocable trust, and deeds to ensure that three parcels of property would not become part of their estate. Respondent agreed to complete these transactions.

3

For his services, relator charged the couple $1,650, which they paid in full. The couple gave respondent copies of the deeds to the three properties.

{¶ 11} In December 2004, the couple met with respondent and signed various documents, including a revocable trust and quitclaim deeds to transfer the real property into the trust. But after her husband's death in June 2006, the wife learned that respondent had still not recorded one of the quitclaim deeds. Respondent charged an additional $166.50 to fix the problem.

{¶ 12} Then, in attempting to transfer the property, respondent told the wife that he needed her to sign the affidavits as surviving spouse and joint survivor to put her "ownership of the * * * properties on record." But when he mailed the affidavits to the wife, respondent had already notarized the blank signature line, although the document stated that the affiant had signed in his presence. This violated the jurat on both affidavits, and realizing the impropriety, the wife would not sign either affidavit.

{¶ 13} The wife later hired other counsel to resolve the transfer of property and close her husband's estate, incurring additional attorney fees and other expenses in the process.

{¶ 14} Because respondent had violated his duty to ensure the authenticity of his client's signature on two affidavits while also failing to transfer property as promised, the board found the evidence clear and convincing that he had violated DR 1-102(A)(4) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting conduct prejudicial to the administration of justice), 1-102(A)(6) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law), and 6-101(A)(3) (prohibiting the neglect of an entrusted legal matter). We accept these findings of misconduct.

*The Second Client's Grievance*

{¶ 15} After reviewing their insurance and estate-planning needs in late 2006, a second couple consulted respondent about establishing an irrevocable

trust. Respondent agreed to create the trust and to transfer the couple's real estate into it. The couple paid respondent's $2,000 fee and executed the trust document that he prepared.

{¶ 16} On respondent's recommendation, the couple agreed to have title to vehicles and bank accounts transferred into the trust. They also anticipated the transfer of their real estate, but as time passed, they continued to receive tax notices for the property in their name rather than in the name of the trust. When the couple asked respondent to explain, he promised to look into the matter.

{¶ 17} Respondent never spoke with the couple again, despite all their efforts to contact him. The couple eventually retained other counsel, who in late August 2008 completed transfer of the trust property. In doing so, the successor counsel discovered that the declaration of trust had not been filed with the county recorder. The successor counsel arranged for this filing, which cost the couple an additional $150 to $200.

{¶ 18} With the irrevocable trust, this couple had hoped to facilitate their eventual move into a nursing home and receipt of Medicaid benefits. Respondent's one-and-one-half-year delay in transferring their property into the trust, however, also delayed Medicaid eligibility under that plan. Respondent did not return any portion of the $2,000 for his failure to complete the transfer of property into the irrevocable trust.

{¶ 19} Because respondent failed to complete work as promised and then lost all contact with these clients, the board found the evidence clear and convincing that he had violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation with the thoroughness and preparation reasonably necessary under the circumstances); 1.3 (requiring a lawyer to act with reasonable diligence and promptness in representing a client) and its earlier counterpart, DR 6-101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter); 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the

administration of justice); and Prof.Cond.R. 8.4(h) (prohibiting conduct that adversely reflects on the lawyer's fitness to practice law) and its predecessor, DR 1-102(A)(6).

## Sanction

{¶ 20} In recommending a sanction for respondent's misconduct, the board weighed the mitigating and aggravating factors listed in BCGD Proc.Reg. 10(B).

{¶ 21} As a mitigating factor under BCGD Proc.Reg. 10(B)(2)(a), the board cited respondent's lack of any prior disciplinary record. But the board attributed no mitigating effect to respondent's asserted alcohol dependence. Though this condition might have weighed in his favor under BCGD Proc.Reg. 10(B)(2)(g), he failed to satisfy requirements of the rule, including that the condition had been medically diagnosed and had contributed to cause his misconduct. As aggravating factors, the board found that respondent had committed multiple offenses, had failed to cooperate in the disciplinary process, had harmed vulnerable victims, and had failed to make restitution. See BCGD Proc.Reg. 10(B)(1)(d), (e), (h), and (i).

{¶ 22} We accept these findings. Moreover, because an indefinite suspension is commensurate with sanctions imposed in similar cases, we also accept the board's recommendation of that sanction. A lawyer's indifference toward the process of discipline within the legal profession is entirely unacceptable. Indeed, we have held that an indefinite suspension from the practice of law "is especially fitting * * * [where] neglect of a legal matter is coupled with a failure to cooperate in the ensuing disciplinary investigation." *Warren Cty. Bar Assn. v. Lieser* (1997), 79 Ohio St.3d 488, 490, 683 N.E.2d 1148. The single mitigating factor that a lawyer has no previous disciplinary record does not warrant a departure from this rule.

**{¶ 23}** We therefore indefinitely suspend respondent from the practice of law in Ohio. Pursuant to Gov.Bar R. V(10)(B), he may not apply for the reinstatement of his license for two years from the date of this order. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

David M. Rickert, for relator.

_____