**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Mahoning Cty. Bar Assn. v. Macejko*, **Slip Opinion No. 2022-Ohio-322.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-322

MAHONING COUNTY BAR ASSOCIATION *v*. MACEJKO.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Mahoning Cty. Bar Assn. v. Macejko*, Slip Opinion No. 2022-Ohio-322.]**

(No. 2020-1513—Submitted June 16, 2021—Decided February 9, 2022.)

*Attorneys—Rules of Professional Conduct—Willfulness and intent of conduct under Prof.Cond.R. 8.4(c)—Cause dismissed.*

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-031.

———————————

**Per Curiam Opinion announcing the judgment of the court.**

{¶ 1} Respondent, Joseph Raymond Macejko, of Poland, Ohio, Attorney Registration No. 0070222, was admitted to the practice of law in Ohio in 1998.

{¶ 2} In a July 2020 complaint, relator, Mahoning County Bar Association, alleged that Macejko violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) by

notarizing unsigned powers of attorney—one of which was later signed outside of his presence.

{¶ 3} The parties submitted stipulations of fact and mitigating factors and agreed that no aggravating factors were present. Macejko also testified at a hearing before a three-member panel of the Board of Professional Conduct and urged the panel to dismiss the complaint on the ground that his conduct was not intentional. After the hearing, the panel issued a report in which it found that Macejko had violated Prof.Cond.R. 8.4(c) and recommended that he be publicly reprimanded. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 4} Macejko objects and renews his argument that relator's complaint should be dismissed because Prof.Cond.R. 8.4(c) requires an element of intentional wrongdoing that is absent from this case. For the reasons that follow, we sustain Macejko's objection and dismiss relator's complaint.

*The Conduct at Issue*

{¶ 5} In July 2017, Macejko's friend and client, Robert Durick, asked Macejko to review the estate-planning documents of his parents, Joseph Jr., and Mary Lou Durick. Shortly thereafter, Macejko prepared updated wills, durable powers of attorney, and healthcare powers of attorney for the Duricks. Those documents named the couple's three children as beneficiaries of the surviving spouse and designated Robert as the Duricks' attorney-in-fact.

{¶ 6} Macejko personally delivered the final drafts of the estate-planning documents to the Duricks for their review and approval in late July on his way home from the office. For his own convenience, Macejko prenotarized the powers of attorney before leaving his office so that he would not have to remember to take his notary stamp and seal. Macejko testified that he had planned to review the documents with the Duricks at their home that day or soon thereafter and that he

had planned to have the Duricks execute the documents during that meeting if the documents proved satisfactory to them.

**{¶ 7}** When Macejko arrived at the Duricks' home, their daughter, Janet, informed him that Mary Lou was not feeling well. She asked if Macejko could come back another time. He agreed to do so and left the documents for the Duricks to review with the expectation that Robert or Janet would call him to arrange another meeting. A couple of weeks later, Robert asked Macejko to change the powers of attorney to designate Janet as the primary attorney-in-fact and himself as the successor attorney-in-fact. Macejko testified that he made the requested changes to the powers of attorney on his computer but that he had intended to wait until he had all of the information that he needed to make the requested changes to the Duricks' real-property deeds before making another trip to their home. He also stipulated that he had planned to return to the Duricks' home with a witness so that the Duricks could execute the documents—though we note that the document at issue here did not require a witness.

**{¶ 8}** Sometime in August 2017, Macejko learned that the relationship between the Duricks' children had deteriorated and that the Duricks had retained another attorney to handle their estate-planning needs. Macejko never billed the Duricks for his services.

**{¶ 9}** In mid-December 2017, Joseph Jr. died; he was preceded in death by Mary Lou in October of that year. The will of Joseph Jr. was filed in the probate court as the surviving spouse. Robert contested the will, which had left the Duricks' entire estate to Janet.

**{¶ 10}** One issue in the will contest was whether Macejko had prenotarized the estate-planning documents that he had prepared for the Duricks or whether he had received signed documents from the Duricks and notarized them at a later date outside of their presence. Macejko was deposed in August 2019 as part of that action. During Macejko's deposition, the attorney for the estate presented an

executed copy of the power of attorney that Macejko had prepared and notarized for Mary Lou on July 28, 2017. At that deposition, Macejko testified that he had never seen a copy of the executed document before his deposition and that he understood the Duricks had used the services of another attorney to handle their estate-planning needs. Immediately after the deposition, Macejko went to his office and wrote a letter to relator reporting that his conduct in notarizing the documents may have violated the Rules of Professional Conduct.

*Analysis*

**{¶ 11}** It is undisputed that (1) Macejko never saw the Duricks sign any of the documents that he had prepared for them, (2) the Duricks never acknowledged to Macejko that they had executed any of those documents, and (3) relator has presented evidence that *one* of those documents—a durable power of attorney—was later signed by Mary Lou Durick.

**{¶ 12}** R.C. 147.541 provides that in the context of a notary jurat, the words "acknowledged before me" mean that the person acknowledging the document (1) appeared before the person taking the acknowledgment, (2) acknowledged that he or she executed the instrument, and (3) executed it for the purposes therein stated. Those words further mean that the notary knew or had satisfactory evidence that the person acknowledging the document was the person named in that document. *Id.* Macejko has admitted that his execution of the notary jurat on the power of attorney was a misrepresentation of fact because Mary Lou did not appear before him when he notarized the document. Macejko argues, however, that because he did not intend for the power of attorney to be signed outside of his presence, his conduct did not constitute an *intentional* act of dishonesty, fraud, deceit, or misrepresentation. He also notes that R.C. 147.141(A)(8), which took effect in September 2019, provides that a notary public shall not "[a]ffix the notary's signature to a blank form of an affidavit or certificate of acknowledgment

4

and deliver that form to another person with the intent that it be used as an affidavit or acknowledgment."

{¶ 13} Attorney-discipline cases involving the improper notarization of documents often involve the attorney's having notarized one or more signed documents without witnessing the signature and without having the signatory personally appear before the attorney to acknowledge the signature. For example, in *Cincinnati Bar Assn. v. Gottesman*, 115 Ohio St.3d 222, 2007-Ohio-4791, 874 N.E.2d 778, an attorney asked Gottesman to notarize a power of attorney purportedly signed by his wife. Trusting that the signature was genuine, Gottesman notarized the document, swearing in the jurat that he had witnessed the wife's signature when, in fact, the wife had not appeared before him or signed the documents. The attorney who sought the notarization subsequently used the fraudulent document to obtain a line of credit secured by the residence that he owned with his wife. We found that Gottesman violated DR 1-102(A)(4), the predecessor to Prof.Cond.R. 8.4(c), and publicly reprimanded him for that misconduct. *See also Columbus Bar Assn. v. Dougherty*, 105 Ohio St.3d 307, 2005-Ohio-1825, 825 N.E.2d 1094 (publicly reprimanding an attorney who notarized a liquor-license application without witnessing the applicant's signature, which turned out to be a forgery); *Disciplinary Counsel v. Simon*, 71 Ohio St.3d 437, 644 N.E.2d 309 (1994) (publicly reprimanding an attorney who notarized and witnessed signatures on a real-property deed that had been signed outside of his presence, based upon the representation of the grantors' son that the grantors had signed the document). The notarization in *Gottesman* legitimized a fraudulent signature that had been placed on the document outside of the notary's presence.

{¶ 14} We have also publicly reprimanded attorneys who have notarized unsigned documents and then delivered them to others with the intent that they be executed outside of the notarizing attorney's presence. In *Cincinnati Bar Assn. v. Thompson*, 129 Ohio St.3d 127, 2011-Ohio-3095, 950 N.E.2d 550, we adopted a

consent-to-discipline agreement in which Thompson, an attorney, stipulated that he had notarized two unsigned documents in contravention of their jurats and had delivered the documents to his former law partner, who later presented the prenotarized documents to his business associate to be signed outside of Thompson's presence. The business associate did not sign the documents. Unlike Macejko, Thompson delivered the prenotarized documents to his former partner with no intent to be present for their execution. Thompson stipulated that his conduct violated Prof.Cond.R. 8.4(c), and we publicly reprimanded him for that misconduct.

{¶ 15} And in *Dayton Bar Assn. v. Brown*, 124 Ohio St.3d 221, 2009-Ohio-6424, 921 N.E.2d 220, an attorney notarized two unsigned affidavits with a jurat stating that the affidavits had been signed in his presence. The attorney then mailed those affidavits to his client for her to sign. Recognizing the impropriety of the notarization, the client refused to sign both affidavits. Brown did not answer the disciplinary complaint or otherwise appear at the board proceeding. We adopted the board's findings that relator had established by clear and convincing evidence that Brown's failure to ensure the authenticity of his client's signature on the two affidavits violated DR 1-102(A)(4) and other disciplinary rules prohibiting lawyers from engaging in conduct that is prejudicial to the administration of justice and conduct that adversely reflects on the lawyer's fitness to practice law. Because Brown had committed additional misconduct and failed to cooperate in the disciplinary investigation, we indefinitely suspended him from the practice of law.

{¶ 16} In contrast to Brown, who mailed prenotarized documents to his client for her signature, defaulted in the proceedings before the board, and presented no evidence in his defense, Macejko has maintained throughout these proceedings that he always intended for the Duricks to execute the prenotarized documents in his presence. He further acknowledged that when he left the documents for the Duricks to review, he should have removed the pages containing his notary jurat.

**{¶ 17}** To support his argument that this case should be dismissed, Macejko points to this court's decision in *Disciplinary Counsel v. Freedman*, 110 Ohio St.3d 284, 2006-Ohio-4480, 853 N.E.2d 291, in which we publicly reprimanded an attorney who asked an associate to notarize his signature on a mortgage instrument and deed on which he had left the signature lines for his wife blank. After the associate notarized the documents, Freedman signed his wife's name to both documents. The associate later averred that, because she had trusted that Freedman would not ask her to improperly notarize a document, she did not examine the jurat language and did not realize that she was notarizing the wife's missing signature. Although Freedman was found to have violated DR 1-102(A)(4), Macejko notes that the associate was never charged with misconduct for notarizing documents containing blank signature lines. Macejko contends that the associate was not charged because, like him, she had notarized the unsigned documents without intending to make a misrepresentation.

**{¶ 18}** Macejko also notes that on at least one occasion, we have dismissed an alleged violation of Prof.Cond.R. 8.4(c) on the ground that the attorney did not engage in an *intentional* act of dishonesty, fraud, deceit, or misrepresentation. In *Disciplinary Counsel v. Mecklenborg*, 139 Ohio St.3d 411, 2014-Ohio-1908, 12 N.E.3d 1166, an attorney, who was also a member of the Ohio House of Representatives, was arrested and charged with operating a vehicle while intoxicated ("OWI") in Indiana; his driving privileges were suspended in that state for refusing to take a breath test. Four days after his arrest and arraignment—and acting on the advice of counsel—Mecklenborg appeared at an Ohio licensing agency and applied to renew his expired Ohio driver's license. There, he signed a form containing preprinted statements attesting that his driving privileges had not been suspended, revoked, or canceled and that he had no pending motor-vehicle-related violations in Ohio or any other state. We adopted the board's recommendation that we dismiss a stipulated violation of Prof.Cond.R. 8.4(c) on

the ground that Mecklenborg did not engage in an intentional act of dishonesty, fraud, deceit, or misrepresentation. Nevertheless, we accepted the parties' stipulation that Mecklenborg's OWI and negligent misrepresentation of facts on his application to renew his driver's license adversely reflected on his fitness to practice law in violation of Prof.Cond.R. 8.4(h). And we publicly reprimanded him for that misconduct.

{¶ 19} We note that the preamble to the Rules of Professional Conduct at paragraph 19 states:

> Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process. The rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question and in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation. Moreover, the rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the willfulness and seriousness of the violation, extenuating factors, and whether there have been previous violations.

Additionally, Gov.Bar R. IV(1) provides, "The *willful* breach of the Rules shall be punished by reprimand, suspension, disbarment, or probation as provided in Gov. Bar R. V." (Emphasis added.)

{¶ 20} There can be no doubt that Macejko exhibited poor judgment in prenotarizing the Duricks' powers of attorney and relinquishing control of those documents to the Duricks without voiding or removing the completed notary jurats. Indeed, we have stated that notaries " 'must not take a cavalier attitude toward their

notary responsibilities and acknowledge the signature of persons who have not appeared before them,' " *Lorain Cty. Bar Assn. v. Kennedy*, 95 Ohio St.3d 116, 117, 766 N.E.2d 151 (2002), quoting *Lorain Cty. Bar Assn. v. Papcke*, 81 Ohio St.3d 91, 93, 689 N.E.2d 549 (1998), because under Evid.R. 902(8), notarized documents are self-authenticating, *id.* Here, however, Macejko testified that he had never prenotarized documents before the single incident at issue in this case—and that he never would again.

{¶ 21} The parties stipulated that Macejko did not act with a dishonest or selfish motive, that he self-reported his error as soon as he realized that it had occurred, and that he exhibited a cooperative attitude toward the disciplinary proceedings. Macejko has also submitted 17 letters attesting to his honesty, good character, and reputation—most of which are from attorneys and judges who were aware of the charges against him. Moreover, it appears that just one document was signed outside of Macejko's presence, and there is no evidence that it was used for any purpose in the month that had elapsed between the time that Macejko left the document with the Duricks and their execution of new estate-planning documents.

{¶ 22} Because Macejko always intended that the Duricks' estate-planning documents would be executed in his presence, we find that his conduct did not amount to a willful breach of the rules. We also find that his conduct was not nearly as egregious as the conduct at issue in *Gottesman*, *Thompson*, *Brown*, and *Freedman*, in which attorneys notarized signed documents without having the signatory appear before them, notarized unsigned documents with no intention of being present for their execution, or forged signatures on documents notarized by others. And all but one of those cases resulted in a public reprimand—the lowest sanction that we impose for attorney misconduct. *See* Gov.Bar R. V(12)(I) and (K).

{¶ 23} On these facts, we decline to find that Macejko engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Prof.Cond.R. 8.4(c).

**{¶ 24}** Accordingly, we sustain Macejko's objection and dismiss this case.

Cause dismissed.

O'CONNOR, C.J., and DEWINE, J., concur.

KENNEDY, J., concurs, with an opinion joined by DEWINE, J.

STEWART, J., concurs in judgment only.

BRUNNER, J., dissents, with an opinion joined by FISCHER and DONNELLY, JJ.

_____

**KENNEDY, J., concurring.**

**{¶ 25}** Because respondent, Joseph Raymond Macejko, did not willfully violate Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) when he notarized unsigned powers of attorney, I concur in the majority's decision to dismiss this case. I write separately to respond to the dissent's contention that discipline is permissible and warranted.

**{¶ 26}** Gov.Bar R. IV(1) provides: "The Ohio Rules of Professional Conduct, effective February 1, 2007, as amended, shall be binding upon all persons admitted to practice law in Ohio. The willful breach of the Rules shall be punished by reprimand, suspension, disbarment, or probation as provided in Gov. Bar R. V." Neither the Supreme Court Rules for the Government of the Bar nor the Rules of Professional Conduct define the word "willful." However, when interpreting a court rule, we give undefined words their ordinary meaning. *See Erwin v. Bryan*, 125 Ohio St.3d 519, 2010-Ohio-2202, 929 N.E.2d 1019, ¶ 22. And willful misconduct, we have explained, involves "an intentional deviation from a clear duty or from a definite rule of conduct." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, paragraph two of the syllabus.

**{¶ 27}** Therefore, for Macejko to be subjected to discipline for violating Prof.Cond.R. 8.4(c) in this case, there must be evidence showing that he willfully

10

and intentionally misrepresented that he had witnessed one of his clients sign a power of attorney in his presence. The evidence in this case does not support a finding that Macejko acted with that mental state.

{¶ 28} In this case, Macejko prepared a package of estate-planning documents for his clients to sign, and he intended to review those documents with his clients at their home and have them execute the documents in his presence. He prenotarized the powers of attorney to avoid forgetting to take his notary stamp and seal to the clients' home. When he arrived at his clients' home, he learned unexpectedly that he would be unable to meet with the clients, and he left the packet of estate-planning documents with the clients' daughter. However, Macejko did not intend for any of those documents to be signed by the clients outside of his presence, and when he learned that one of the powers of attorney had been signed, he self-reported his actions to relator.

{¶ 29} The evidence presented in this case demonstrates that Macejko did not intend to misrepresent that he had been present and witnessed one of his clients sign a power of attorney. And it is for this reason that the cases on which the dissent relies are distinguishable. In each of those cases, the disciplined attorney had notarized documents that had already been signed outside of the attorney's presence. *See Cincinnati Bar Assn. v. Gottesman*, 115 Ohio St.3d 222, 2007-Ohio-4791, 874 N.E.2d 778; *Columbus Bar Assn. v. Dougherty*, 105 Ohio St.3d 307, 2005-Ohio-1825, 825 N.E.2d 1094; *Disciplinary Counsel v. Simon*, 71 Ohio St.3d 437, 644 N.E.2d 309 (1994). Contrary to the dissent's assertion, this distinction is material. While Macejko did not intend to misrepresent that one of his clients had signed a legal document in his presence, the attorneys in each of the cases cited by the dissent did intend to make such a misrepresentation. Those attorneys knew that the documents had been signed outside of their presence, and they therefore intentionally misrepresented that they had witnessed the signatures. The attorneys

in those cases may have acted in good faith, but they nonetheless willfully and intentionally engaged in conduct involving misrepresentation.

{¶ 30} What is immaterial, however, is whether the documents Macejko notarized were forged or whether his actions created a risk of forgery or of facilitating fraud, as the dissent contends. The sole question presented in this case is whether Macejko willfully and intentionally committed professional misconduct. Because the evidence in this case does not establish that Macejko acted with that mental state, I concur in the majority's decision to dismiss this case.

DeWINE, J., concurs in the foregoing opinion.

_____

**BRUNNER, J., dissenting.**

{¶ 31} I disagree with the majority's decision to dismiss the complaint against respondent, Joseph Raymond Macejko.

{¶ 32} This case is focused on Macejko's notarization of a power of attorney that he had prepared for Mary Lou Durick. He notarized the document on July 28, 2017, before Mary Lou had signed it. He knew he would be delivering the document to her later that day and he anticipated that she would review and execute the document "at that time * * * or very soon thereafter." He chose to notarize the document in advance for his own convenience; he did not want to take his notary stamp and seal with him to their meeting, because when he had taken them out of his office in the past, he had forgotten to bring them back, which was an inconvenience the next time he needed them. But Macejko did not meet with Mary Lou when he delivered the document on July 28, and at no point after that did he witness Mary Lou execute the power of attorney or have her acknowledge to him that she had signed the document. Instead, Mary Lou appears to have signed the power of attorney outside of Macejko's presence. She and her husband later passed away and the document became an issue in litigation over her husband's will.

{¶ 33} Under Prof.Cond.R. 8.4(c), it is professional misconduct for an

attorney to "engage in conduct involving * * * misrepresentation." Macejko maintains that intent is an element of this rule. He further claims that he always intended to be present when Mary Lou executed the prenotarized document, and he argues that this means he did not make an intentional misrepresentation in violation of Prof.Cond.R. 8.4(c). He therefore asks this court to dismiss the complaint against him.

{¶ 34} The lead opinion grants Macejko the dismissal he seeks, apparently on the premise that Macejko's subjective intent at the time he notarized the power of attorney makes him not culpable. It reasons that Macejko's conduct was not a "willful breach" of Prof.Cond.R. 8.4(c) and "not nearly as egregious" as the conduct of attorneys in several analogous cases. Lead opinion, ¶ 22.

{¶ 35} This reasoning does not hold up. Two of the cases discussed by the majority involved attorneys who notarized documents that had already been signed outside of their presence. *See Cincinnati Bar Assn. v. Gottesman*, 115 Ohio St.3d 222, 2007-Ohio-4791, 874 N.E.2d 778; *Columbus Bar Assn. v. Dougherty*, 105 Ohio St.3d 307, 2005-Ohio-1825, 825 N.E.2d 1094. We imposed a public reprimand in both cases. *Gottesman* at ¶ 6- ; *Dougherty* at ¶ 9, 17. The present case involves the same basic actions, but in reverse order: Macejko notarized the document first and *then* allowed it to be signed outside of his presence. This difference is immaterial, however, because the same risk is presented, regardless whether the improper notarization occurred before or after the document was signed.

{¶ 36} One of the main purposes of a notarization requirement is to protect against fraud. *See* Closen & Dixon, *Notaries Public From the Time of the Roman Empire to the United States Today, and Tomorrow*, 68 N.D.L.Rev. 873, 874 (1992). Such fraud can occur when a signature is forged or when a signature is genuine but the signatory later claims it is a forgery in an attempt to avoid obligations created by the signature. *Id.* at 874, fn. 6. Because notarization provides protection against

this type of fraud, when a properly notarized document is presented in court as evidence, it does not need to be authenticated through extrinsic evidence. A properly notarized document is self-authenticating. *See* Evid.R. 902(8) ("Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: * * * Documents accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public or other officer authorized by law to take acknowledgments").

{¶ 37} When an attorney notarizes a document that was not signed in his presence, the attorney risks facilitating fraud. In particular, the notarization may help a forged signature effect additional unlawful actions. And that is exactly what happened in both *Gottesman* and *Dougherty*. In both cases, the attorney's improper notarization was used to legitimize a forged signature. *Gottesman* at ¶ 3; *Dougherty* at ¶ 8.

{¶ 38} The risk created by Macejko's actions is the same. By notarizing unsigned documents and leaving them at Mary Lou's home, Macejko created a risk that Mary Lou's signature could be forged on any of the documents, such as the power of attorney, which could then be used as a self-authenticating document to achieve an unlawful end.

{¶ 39} One difference here is that we are not presented with any evidence that Mary Lou's signature *was* forged or used for any unlawful purpose, but Macejko deserves no credit for that. He never followed up with Mary Lou after delivering the prenotarized power of attorney to her home on July 28, 2017.

{¶ 40} Nor does the fact that Mary Lou's signature was not forged justify declining to find a violation of Prof.Cond.R. 8.4(c) or failing to impose a public reprimand. In another case cited by the majority, an attorney notarized and witnessed signatures on a real-property deed that had been signed outside of his presence, based on the representation of the grantors' son that the grantors had signed the document. *See Disciplinary Counsel v. Simon*, 71 Ohio St.3d 437, 644

N.E.2d 309 (1994). In *Simon*, we did not indicate that the signatures had been forged. Nonetheless, because the deed had been signed outside of the attorney's presence, we found that the notarization constituted "conduct involving dishonesty, fraud, deceit, or misrepresentation" and we imposed a public reprimand. *Id.* at 438.

{¶ 41} The result should be the same here. Macejko admits that his "execution of the notary jurat on the power of attorney [that he had prepared] for Mary Lou Durick was a misrepresentation of fact because she had not appeared before him at the time he signed the document." Whatever his intention may have been at that time, his actions created a risk that the power of attorney could be used for an unlawful purpose. I would therefore find that he violated Prof.Cond.R. 8.4(c) and impose a public reprimand.

{¶ 42} I respectfully dissent.

FISCHER and DONNELLY, JJ., concur in the foregoing opinion.

————————————

Ronald E. Slipski and David C. Comstock Jr., for relator.

Montgomery Jonson, L.L.P., and George D. Jonson, for respondent.

————————————