[Cite as *State v. Nerswick*, 2025-Ohio-1802.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240304 |
| | | TRIAL NO. C/23/CRB/7383 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| NICK NERSWICK, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is vacated, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 5/21/2025 per order of the court.**

**By:**_____
   **Administrative Judge**

[Cite as *State v. Nerswick*, 2025-Ohio-1802.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-240304 |
| | | TRIAL NO. | C/23/CRB/7383 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| | | *O P I N I O N* | |
| NICK NERSWICK, | : | | |
| Defendant-Appellant. | : | | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Vacated and Cause Remanded

Date of Judgment Entry on Appeal: May 21, 2025


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bryan R. Perkins*, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1} In this case, defendant-appellant Nick Nerswick, a.k.a. Shaykh-Esa An-Nierzwicki-Ar-Rabbani ("Appellant"),[1] contends that his conviction for domestic violence was invalid, because the officer who filed the complaints against him did not do so under oath. The State concedes that Appellant is correct, and we agree. Because no complaint was made under oath in compliance with Crim.R. 3(A), the trial court was without jurisdiction to hear the case. We therefore vacate Appellant's conviction and order the complaints dismissed.

## I. BACKGROUND

{¶2} On May 7, 2023, two criminal complaints, along with a supporting affidavit, were filed against Appellant in the Hamilton County Municipal Court. The complaints charged Appellant with domestic violence against and the assault of his estranged (now former) wife, in violation of R.C. 2919.25 and 2903.13. All three documents were signed by a single complainant/affiant, Delhi Police Officer Chett Williams. All three bore the signature and seal of Delhi Police Officer Goddard[2] on the line reserved for a "Notary Public/Deputy Clerk," indicating that Officer Williams had "[s]worn to and subscribed" the documents in Officer Goddard's presence.

{¶3} After a bench trial, the municipal court found Appellant guilty of both offenses and merged the assault charge into the domestic-violence charge. The court sentenced Appellant to 180 days' incarceration, crediting him for the 24 days he had already served and suspending the remainder of the sentence. The court also placed

---

[1] Appellant was charged as "Nick Nerswick," but he made clear, both in his brief and before the trial court, that he wished to be referred to as Shaykh-Esa An-Nierzwicki-Ar-Rabbani. To eliminate any confusion, we refer to him simply as "Appellant."

[2] Although Officer Goddard's signatures on the documents are not legible, we can be certain they came from Officer Goddard's hand based on footage from Officer Williams's body-worn camera, as we explain later in this opinion. Several of the illegible signatures on the notary/clerk/judge lines appeared next to "#59."

Appellant on two years' probation. Appellant timely appealed.

## II. FIRST ASSIGNMENT OF ERROR: CRIM.R. 3(A)

{¶4} In his first assignment of error, Appellant asserts that the trial court "lacked subject matter jurisdiction over these charges." Specifically, he argues that "the complaints and affidavits were not properly notarized under oath as required by Crim.R. 3(A) and as needed to invoke the jurisdiction of the municipal court." The State concedes this error in its brief. While the State's confession of error does not bind this court, we may nevertheless "accept the concession as part of our analysis," so long as it has a sound basis in law and fact. *See State v. Hermes*, 2023-Ohio-2011, ¶ 26 (6th Dist.); *see also Young v. United States*, 315 U.S. 257, 258 (1942). In this case, the State's confession of error is well-founded.

{¶5} While the State may prosecute felonies only by indictment or information, the Ohio Rules of Criminal Procedure allow the prosecution of misdemeanors "by complaint . . . in courts inferior to the court of common pleas." Crim.R. 7(A). Filing a criminal complaint is an act of jurisdictional significance. "The filing of a complaint invokes the jurisdiction of the municipal court," and if a "complaint is not filed in a case, the trial court has not obtained jurisdiction over it." *Zanesville v. Rouse*, 2010-Ohio-2218, ¶ 5, *vacated in part on other grounds*, 2010-Ohio-3754; *accord State v. Bess*, 2012-Ohio-3333, ¶ 8 (1st Dist.). A criminal complaint must (1) include "a written statement of the essential facts constituting the offense charged," (2) cite "the numerical designation of the applicable statute," and (3) "be made upon oath before any person authorized by law to administer oaths." Crim.R. 3(A); *accord Bess* at ¶ 6.

{¶6} This case turns on the last requirement—that the complaint be made "upon oath." If a court determines that a criminal complaint was not made under a

4

proper oath, then it "must find the complaint defective and dismiss the case for lack of jurisdiction." *State v. W.T.D.*, 2021-Ohio-873, ¶ 14 (2d Dist.).

{¶7} As is the case with affidavits and other sworn documents, courts generally accept a criminal complaint as duly sworn if it was signed by an official authorized to administer the oath. *See State v. Davies*, 2013-Ohio-436, ¶ 25 (11th Dist.). A notary's signature and seal are evidence to prove that a complainant swore to the truth of their complaint. *See id.* at ¶ 24 ("[A] jurat is merely a certificate which is intended to establish that the oath was duly administered by a duly authorized individual."); *Stern v. Bd. of Elections*, 14 Ohio St.2d 175, 181 (1968) (jurat bearing notary's signature and seal is "prima facie evidence of the fact that the affidavit was properly made before such notary"). But even when a complaint is not notarized, it may still comply with Crim.R. 3 if it is evident that the complaint was "made upon oath" by someone "authorized by law to administer oaths." *See State v. Taylor*, 2015-Ohio-819, ¶ 10-12 (12th Dist.) ("While the complaint . . . was not notarized, it was nonetheless signed by the deputy clerk of the Hamilton Municipal Court, who was authorized to administer the oath required by Crim.R. 3."). The text of Crim.R. 3(A) is concerned with the oath itself, not merely the manner of its verification.

{¶8} In this case, the complaints and affidavit bore Officer Goddard's signature and seal, by which Officer Goddard attested that the documents had been "[s]worn to and subscribed" by Officer Williams in his presence. Officer Goddard's seal, which took the form of a round ink stamp, bore the words, "PEACE OFFICER," in the middle, and the words, "AUTHORIZED TO ADMINISTER OATHS PURSUANT TO O.R.C. 2935.081," along its circumference. The Revised Code section cited by the seal empowers certain peace officers, after training and designation, to "administer oaths and acknowledge criminal and juvenile court complaints, summonses,

affidavits, and returns of court orders in matters related to the peace officer's official duties." R.C. 2935.081(B).

{¶9} Standing alone, Goddard's signature and seal would likely be enough to show that Officer Williams made his complaints under oath and signed the documents in Officer Goddard's presence. But Appellant points us to Officer Williams's body-worn-camera video from the night Officer Williams responded to the home of Appellant's ex-wife, which was admitted into evidence at trial, to rebut this presumption.

{¶10} In the video, a Delhi police officer, identified as Goddard by the name on his uniform,[3] can be seen at the window of Officer Williams's cruiser. Officer Goddard is signing and stamping what he describes to Officer Williams as an assault complaint and affidavit, which he has brought with him from his own vehicle. Officer Goddard explains to Officer Williams, "What I'm doing is I'm going to notarize these. Then you'll just need to sign them. Then you can just go straight down from here to the jail." Officer Williams then pulls out a third form—a visibly blank domestic-violence complaint—which he hands to Officer Goddard for his stamp and signature. Officer Goddard obliges before handing it back to Williams with the whole stack of papers and cautioning him that the forms "still need to be filled out." Officer Williams's camera shows that the domestic-violence complaint atop the stack remains blank, apart from Officer Goddard's signature, seal, and date. Officer Williams places the stack on his vehicle's dashboard without signing them. Shortly thereafter, Officer Goddard departs.

{¶11} The body-worn-camera footage does not show Officer Williams taking

---

[3] The trial transcript also refers to an Officer Goddard who was at the scene that night but did not testify at trial.

any oath or signing any of the documents. Thus, contrary to Officer Goddard's attestations by signature and seal, the complaints and affidavit were neither "[s]worn to" nor "subscribed" at the time Officer Goddard put pen to paper. Officer Goddard's attestations to that effect were therefore false, and his signature on those documents a nullity. A notary public could have his commission revoked for such actions. *See* R.C. 147.141(A)(8) ("A notary public shall not . . . [a]ffix the notary's signature to a blank form of an affidavit or certificate of acknowledgment and deliver that form to another person with the intent that it be used as an affidavit or acknowledgment . . . ."); *see also* former R.C. 147.14 (providing that, at the time these complaints were filed, any notary who "certif[ied] to the affidavit of a person without administering the appropriate oath or affirmation to the person . . . shall be removed from office by the secretary of state"). An attorney, too, would risk serious reprimand for notarizing an affidavit to be signed and completed outside their presence. *See, e.g., Dayton Bar Assn. v. Brown*, 2009-Ohio-6424, ¶ 10-14, 23 (imposing sanctions on attorney in part for signing and mailing affidavits for a client to sign outside his presence); *Cincinnati Bar Assn. v. Thompson*, 2011-Ohio-3095, ¶ 3-5 (upholding consent-to-discipline agreement for attorney who stipulated to notarizing documents to be signed outside his presence).

{¶12} Oaths are not vain formalities. They "'lay[] hold of the conscience of the witness, and appeal[] to his sense of accountability,'" in the hope of "'best insur[ing] the utterance of truth.'" *State v. Ballou*, 21 Ohio App.2d 59, 61 (1st Dist. 1969), quoting *Clinton v. State*, 33 Ohio St. 27, 33 (1877). Oaths carry legal, as well as moral heft, as they threaten to "expose [the declarant] to the penalty of a prosecution for perjury if he testifies falsely and corruptly." (Cleaned up.) *State ex rel. Ross v. King*, 70 Ohio Law Abs. 554, 556 (C.P. 1955). The administration of oaths is thus a matter "of

7

substance, not form," and constitutes "an essential component of . . . legal proceedings." *See State v. Tye*, 2001 WI 124, ¶ 19.

**{¶13}** We are therefore troubled by the casual disregard the officers in the video showed for the duties that come with the power to administer oaths under Ohio law, and for the safeguards and formalities of the legal process. By disregarding the requirements of the law, these officers invalidated the complaints they filed on behalf of the victim, deprived the municipal court of jurisdiction, and secured the dismissal of Appellant's domestic-violence conviction.

**{¶14}** Given the "public trust reposed in [the State's] law enforcement officers" to see that justice be properly done, the State was right to confess this error. *See Young*, 315 U.S. at 258. We accept that confession and sustain Appellant's first assignment of error.

### III. CONCLUSION

**{¶15}** For the foregoing reasons, we vacate the judgment of conviction and remand the cause to the municipal court with instructions to dismiss the complaints against Appellant for lack of jurisdiction. *See* R.C. 2501.02(C) (courts of appeals "shall have jurisdiction upon an appeal . . . to review, affirm, modify, *set aside*, or reverse judgments or final orders" (Emphasis added.)). Because this disposition renders Appellant's other assignments of error moot, we do not address them.

Judgment accordingly.

**KINSLEY, P.J.,** and **NESTOR, J.,** concur.